## IN THE UNITED STATES DISTRICT COURT FOR THE
## WESTERN DISTRICT OF MISSOURI

| | | |
|---|---|---|
| **STEVEN F. MURPHY** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | **Case No.** |
| | ) | |
| **WORLDS OF FUN, LLC.** | ) | |
| <u>**Serve at (Registered Agent):**</u> | ) | |
| **Registered Agent, LTD.** | ) | **JURY DEMANDED** |
| **2345 Grand Blvd. Suite 2400** | ) | |
| **Kansas City, MO. 64108** | ) | |
| | ) | |
| **&** | ) | |
| | ) | |
| **CEDAR FAIR, L.P., d/b/a CEDAR FAIR** | ) | |
| **ENTERTIANMENT COMPANY, d/b/a** | ) | |
| **WORLDS OF FUN/OCEANS OF FUN** | ) | |
| <u>**Serve at (Registered Agent):**</u> | ) | |
| **Registered Agent, LTD.** | ) | |
| **2345 Grand Blvd. Suite 2400** | ) | |
| **Kansas City, MO. 64108** | ) | |
| | ) | |
| **&** | ) | |
| | ) | |
| **MILLENNIUM OPERATIONS, LLC.** | ) | |
| **d/b/a WORLDS OF FUN/OCEANS OF FUN** | ) | |
| <u>**Serve at (Registered Agent):**</u> | ) | |
| **Registered Agent, LTD.** | ) | |
| **2345 Grand Blvd. Suite 2400** | ) | |
| **Kansas City, MO. 64108** | ) | |
| | ) | |
| **&** | ) | |
| | ) | |
| **MAGNUM MANAGEMENT CORPORATION** | ) | |
| **OHIO d/b/a WORLDS OF FUN/OCEANS OF** | ) | |
| **FUN** | ) | |
| <u>**Serve at (Registered Agent):**</u> | ) | |
| **Registered Agent, LTD.** | ) | |
| **2345 Grand Blvd. Suite 2400** | ) | |
| **Kansas City, MO. 64108** | ) | |
| | ) | |
| **Defendants,** | ) | |

1

**PETITION FOR DAMAGES**

COMES NOW Plaintiff, Steven Murphy, and for his Petition against the above listed Defendants states the following.

### Parties, Jurisdiction, and Venue

1.  Plaintiff is an adult male and an individual resident of Kansas City, MO. residing at 3107 NE Russell Road, Kansas City, MO. 64117 within Clay County, Missouri.

2.  Plaintiff Steven Murphy is a 49 year old male Army Veteran who suffers from Major Depressive Disorder/PTSD/Anger Disorder and who was employed at Worlds of Fun within the Oceans of Fun department of the Amusement Park from June 2015 through January 14th, 2019.

3.  Defendant Worlds of Fun LLC (Hereinafter "Worlds of Fun") is a Delaware limited liability company formed under the laws of the State of Delaware and with its principal place of business located at One Cedar Point Drive, Sandusky, Ohio 44870. This Defendant is registered and in good standing with the Missouri Secretary of State (Registration/Charter #FL001411666) and on information and belief does business as and owns and operates the Worlds of Fun Amusement Park (hereinafter "WOF"). The location of the WOF and where the alleged wrongful acts occurred is at Worlds of Fun Amusement Park and specifically within it's Water Park Oceans of Fun located at 4545 World's of Fun Ave., Kansas City, MO. 64161. On information and belief, this Defendant owns and operates the amusement theme park and water park in Clay County, Missouri. Further Upon information and belief, Worlds of Fun, LLC. is a wholly owned

subsidiary of Defendant's Cedar Fair, L.P./Millennium Operations, LLC./and Magnum Management Corporation Ohio. This defendant may be served with process by delivering a summons and copy of this pleading to its registered agent's listed address in the caption above being its registered agent, it principal place of business or as Defendant or its authorized agents may otherwise be allowed pursuant to Federal Law. (See Attached Exhibit #1)

4. Defendant Cedar Fair, L.P is a Delaware limited partnership formed under the laws of the State of Delaware, with its principal place of business located at One Cedar Point Drive, Sandusky, Ohio 44870 and/or P.O. Box 5006 Sandusky, Ohio 44871-8006. Upon information and belief Cedar Fair, L.P. is the/a parent company of Defendant Worlds of Fun, LLC. and This Defendant is registered and in good standing with the Missouri Secretary of State (Charter# LF0006633 and does business as Cedar Fair, L.P. as well as Cedar Fair Entertainment Company. This Defendant owns and operates an amusement theme park in Clay County, Missouri named Worlds of Fun and within it is Oceans of Fun and is the owner of Worlds of Fun, LLC. This defendant may be served with process by delivering a summons and copy of this pleading to its registered agent's listed address in the caption above being its registered agent, it principal place of business or as Defendant or its authorized agents may otherwise be allowed pursuant to Federal Law. (See Attached Exhibit #2)

5. Defendant Millennium Operations, LLC. is a Delaware Limited Liability Company formed under the laws of the State of Delaware with its principal place of business located at One Cedar Point Drive, Sandusky, Ohio 44870. Upon

3

information and belief Millennium Operations, LLC is a part owner of Defendant Worlds of Fun, LLC. This Defendant is registered and in good standing with the Missouri Secretary of State (Registration/Charter #FL001417990) and does business as Millennium Operations, LLC. This Defendant is part owner of and participates in the operations of an amusement theme park in Clay County, Missouri named Worlds of Fun and within the Worlds of Fun amusement park is Oceans of Fun a water park. Millennium Operations, LLC. is a part owner of Worlds of Fun, LLC. This defendant may be served with process by delivering a summons and copy of this pleading to its registered agent's listed address in the caption above being its registered agent, it principal place of business or as Defendant or its authorized agents may otherwise be allowed pursuant to Federal Law. (See Exhibit #3)

6. Defendant Magnum Management Corporation Ohio is a Delaware Corporation formed under the laws of the State of Delaware with its principal place of business located at One Cedar Point Drive, Sandusky, Ohio 44870. Upon information and belief Magnum Management Corporation Ohio is a part owner of Defendant Worlds of Fun, LLC. This Defendant is registered and in good standing with the Missouri Secretary of State (Registration/Charter #FL001417990) and does business as Magnum Management Corporation Ohio. This Defendant a part owner and participates in the operations of an amusement theme park in Clay County, Missouri named Worlds of Fun and within the Worlds of Fun amusement park is Oceans of Fun a water park. Magnum Management Corporation Ohio is a part owner of Worlds of Fun, LLC. This

4

defendant may be served with process by delivering a summons and copy of this pleading to its registered agent's listed address in the caption above being its registered agent, it principal place of business or as Defendant or its authorized agents may otherwise be allowed pursuant to Federal Law. (See Exhibit #4)

7. The acts alleged in this Petition occurred in Clay County, Missouri at the Worlds of Fun Amusement Park located at 4545 World's of Fun Ave., Kansas City, MO. 64161 and specifically within the Ocean of Fun section of the Amusement Park which is a Waterpark. All of which is owned and operated by the named Defendants Worlds of Fun, LLC./Cedar Fair LP/Millennium Operations LLC/Magnum Management Corporation Ohio (hereinafter "Defendants") which have more than 20 employees.

8. The Worlds of Fun Amusement Park with the water park Oceans of Fun within it are located well within the geographic jurisdiction of Western District Court of Missouri at 4545 Worlds of Fun Ave. Kansas City, MO. 64161 (Clay County) which is where all of the alleged wrongful acts took place and Plaintiff is a resident of Clay County Missouri, with all of the Defendants being companies licensed and registered to do Business in the State of Missouri so Venue is proper in the Western District.

9. Plaintiff Files his petition under Federal Laws and Acts specifically through and pursuant to the Equal Employment Opportunity Commission (EEOC) guidelines and protocols, and through The American with Disabilities Act of 1990 (42 U.S.C. Chapter 126 § 12101) (ADA), and the Age Discrimination in Employment

Act (29 U.S.C. § 621- §634 (ADEA) which include and encompass claims of Retaliation and Harassment creating a Hostile Work Environment.

10.     Plaintiff timely filed his charge of discrimination with the EEOC within 300 days of the dates of discrimination and Harassment and within 90 days of receiving the Notice of Right to Sue. (A copy of Plaintiff's Charge of Discrimination is attached and marked as Exhibit #5). (A copy of the Notice of Right to Sue from the EEOC is attached hereto as Exhibit #6 and incorporated herein by reference.)

11.     Jurisdiction and venue are proper in this Court pursuant to Federal Laws of Jurisdiction/Contacts and EEOC Guidelines.

## Agency/Respondeat Superior

12. At all relevant times, the "Defendants, by and through the Worlds of Fun Amusement Park which contains Oceans of Fun Waterpark, were acting by and through their actual and/or ostensible employees and agents in operating their Amusement and Water Park. Defendants, in their official capacity, are the representative Defendants per statute.

13. Whenever reference in this Petition is made to any act or transaction by Defendants, such allegation(s) shall be deemed to mean that the owners, principals, officers, directors, employees, agents and/or representatives of the Defendants and Worlds of Fun Amusement Park knew of, performed, authorized, ratified and/or directed such act(s), transactions, or omissions, on behalf of the Defendants and while actively engaged in the course and scope of their duties.

6

14.  At all relevant times, all employees and agents of the Defendants were acting within the course and scope of their employment and/or agency as employees or agents of the Defendants and Worlds of Fun/Oceans of Fun and in pursuit of furthering the interests of the Defendants and their ownerships interests in doing business as and owning Worlds of Fun Amusement Park which contains the Oceans of Fun Waterpark.

**General Allegations/Facts Applicable to All Counts**

15   In June of 2015 44 year old Steven Murphy (DOB 7/13/1971) began working for Worlds of Fun Amusement Park, in the waterpark division call Oceans of Fun Waterpark Inc. located at 4545 Worlds of Fun Ave., Kansas City, MO. 64161.

16.   The owner of Worlds of Fun Amusement Park and the Oceans of Fun Waterpark contained within the Worlds of Fun Amusement park Facility, is Worlds of Fun, LLC, and its parent ownership companies Cedar Fair, L.P., Inc., Millennium Operations, LLC., and Magnum Management Corporation Ohio and (Hereinafter referred to as "Defendants").

17.   Steven Murphy suffers from a major depressive disorder which is a service related condition tied to his time in the Army during the Gulf War.  This disorder makes it difficult for him to focus on highly detail oriented, office based tasks on a computer in distraction filled environments.

18.   Steven Murphy also suffers from post-traumatic stress disorder, related to both an abusive childhood and childhood sexual assault.  The PTSD makes it almost

impossible for me to be in confined spaces with high concentrations of people, such as Paradise Falls Complex at Oceans of Fun. The combination of the depressive disorder and the PTSD have contributed to an anger disorder as well,

19. Steven Murphy was Discriminated against and harassed and treated unfairly due to his age being older and his disabilities by his co-workers and employer (Managers/Supervisors) and retaliated against by his employer (Managers/Supervisors).

20. Plaintiff's supervisors and managers as well as most of his co-workers were aware of his age (being much older) and my disabilities(medical issues). Steven had previously requested Accommodation/Lenience of discipline with his anger issues and PTSD issues. He asked to use a computer in a distraction free environment to complete the highly detail oriented part of his job and (Part of my special task at Oceans was to move a tool, known as the Operational Training Manikin, about the pools. It is a plastic doll with an open mouth and genitals beneath the clothing) the doll was deeply disturbing to Steven, as it reminds him of his own trauma. This made it incredibly difficult for Steven to do his task without experiencing symptoms that made it difficult to work in the park. At a later point, he tried to get released from the task completely due to his issues with the operational training manikin in relation to his past sexual assault.

21. Steven received a partial accommodation to complete the detail oriented task by hand on printed out forms and not having to be in a hectic environment using a computer. Steven could also work outside of the office in a place where he would

be able to concentrate.   Steven did not receive any accommodation for the operational training manikin.

22.   Plaintiff felt that during the 2018 year through the end of his employment on 1/14/19 that he was discriminated against and harassed as a result of his disabilities/medical issues by the following actions taken against him which were not done to other workers without Steven's Underlying disabilities (ADA), thereby discriminating against Steven and the actions also were of a harassing nature creating a hostile work environment and harassment that resulted in tangible employment actions and was sufficiently pervasive to alter the conditions of employment:

**-a.** Paired with coworkers who were known to be hostile towards Plaintiff.

**-b.** Plaintiff was frequently assigned to an area of Oceans of Fun, Paradise Falls, that was known to trigger his symptoms with his post-traumatic stress disorder.

**-c.**  Plaintiff was frequently the subject of rumors spread behind his back concerning his age, mental health, physical ability, and overall fitness to be an Area Aquatics Supervisor.

**-d.** Plaintiff was denied opportunities he was more than qualified to take advantage of while being relegated to menial tasks.

**-e.** Part of Plaintiff's special task at Oceans was to move a tool, known as the Operational Training Manikin, about the pools.  It is a plastic doll with an open mouth and genitals beneath the clothing.  The doll is deeply disturbing to Plaintiff, as it reminds him of his own trauma.  This made it incredibly difficult to

9

do his task without experiencing symptoms that made it difficult to work in the park.

**-f.** When Plaintiff complained or asked why he was being treated the way he was he was told by his Manager Melanie Scholz frequently throughout 2018:

"This is designed to push you outside of your comfort zone, Murphy," regarding my disabilities and medical conditions, "This is designed to set you up for success." Regarding assignments Steven had issues with, "People have a right to vent, Murphy," Melanie Scholz, in relation to the rumors often spread about Steven's performance. "I can't make people get along," Melanie Scholz, in relation to pairing Steven up with leadership team members who were hostile to him.

**-g.** Plaintiff's authority was regularly undermined with regard to his role as a park safety officer, notably with regard to sleeping guards, and guards who failed various assessment tests, to include Vigilance Awareness Tests. His fellow Supervisors, and the Manager of Aquatics, Melanie Marie Scholz, regularly dismissed, excused, and explained away any failures on the part of the lifeguards.

**-h**. Plaintiff was ordered, against best practices, by Operations Supervisor Tucker West, to put a visibly intoxicated lifeguard, Dalton Flores, on stand at the Surf City Wave Pool on the Saturday of Labor Day 2018. Flores, in his own words, said, "You guys are lucky I am even here. I was doing shots till five in the morning." It was eleven when he arrived, and eleven-thirty when Plaintiff's instructions to put him in a place where he would not be a danger was overridden by Tucker West.

**-i.** At Ellis and Associates International Aquatic Safety School in January 2019, which took place in Phoenix, Arizona, one of Melanie Scholz's peers, who was one of Plaintiff's instructors, Tracey Nefford, regularly clapped his hands in Plaintiff's face as a way of getting his attention. It is Plaintiff's belief he was attempting to trigger a negative PTSD response, and as Plaintiff's peers in the class commented, he only engaged in that behavior with Plaintiff and no one else. Tracey Nefford is also a current Cedar Fair employee as part of their acquisition of Schlitterbahn properties.

**-j.** Plaintiff was assigned a special task by Supervisor Melanie Sholz which triggered his disability symptoms, then reassigned another task of the same type months later.

23. Plaintiff felt that during the 2018 year through the end of his employment on 1/14/19 that he was discriminated against and harassed as a result of his age (ADEA) being older than the persons he worked with by a good number of years issues by the following actions taken against him which were not done to other workers younger than Steven thereby discriminating against Steven and the actions also were of a harassing nature creating a hostile work environment and harassment that resulted in tangible employment actions and was sufficiently pervasive to alter the conditions of employment:

**-a.** Plaintiff was frequently paired with coworkers who were actively hostile towards him.

11

**-b.** Plaintiff was required to check in before he clocked out even though he was a member of the Aquatics Leadership Team. No other Leadership Team members were required to do that.

**-c.** Plaintiff was frequently deprived of knowledge, resources, and staffing needed to do his job.

**-d.** Plaintiff was penalized for any failure to perform on his part, while he often had to clean up, fix, and remediate issues left behind by other members of the Leadership Team.

**-e.** Plaintiff was frequently the subject of rumors spread behind his back concerning his age, mental health, physical ability, and overall fitness to be an Area Aquatics Supervisor.

**-f.** Plaintiff was denied opportunities he was more than qualified to take advantage of while being relegated to menial tasks.

**-g.** During a closing shift meeting where guards were needed for a special event, Lead Lifeguard at Surf City Wave Pool, Jordan Jones, claimed when talking about Plaintiff that, "The old man can't work that shift (it was a midnight guarding shift) because he has to be in bed."

**-h.** Plaintiff was often selected for drug tests because it was believed that since Plaintiff was older and a college instructor of history in his forties that he'd most likely pass those tests. Plaintiff got tested twice in one month back in 2015 and was regularly tested and tested much more that those employees and co-workers who were younger than him.

12

**-i.** In 2016 Plaintiff often had his Lead Lifeguard Clipboard for the Surf City Wave Pool taken by Supervisor Alexis Stewart for hours on end. When Plaintiff would get the board back, the paperwork would be hours behind, and he'd be held accountable for not completing it.

**-j.** The other Supervisors often said, "Murphy is too strict," and they often referred to me as, "The Relic," and, "The Old Man."

24. I believe that I was Retaliated against by my supervisors due to the fact that I was older that my co-workers (ADEA) and that I had requested accommodations for my disability and medical issues (ADA). The following general acts of retaliation occurred during my employment at Worlds of Fun/Oceans of Fun in 2018/2019:

**-a.** Plaintiff was frequently paired with coworkers who were actively hostile towards him:

**-b.** When Plaintiff complained or asked why he was being treated the way he was he was told by his Manager Melanie Scholz frequently throughout 2018: "This is designed to push you outside of your comfort zone, Murphy," regarding my disabilities and medical conditions, "This is designed to set you up for success." Regarding assignments Steven had issues with, "People have a right to vent, Murphy," Melanie Scholz, in relation to the rumors often spread about Steven's performance. "I can't make people get along," Melanie Scholz, in relation to pairing Steven up with leadership team members who were hostile to him.

**-c.** Frequently had saves "disregarded," by Leads and Supervisors over the course of employment. The reasons for disregarding saves ranged from, "You didn't use the Ellis and Associates save technique," to, "I think you are just overreacting," and, "Well, they weren't really in trouble so we do not need to fill out a report."

**-d.** Plaintiff was often selected for drug tests because it was believed that since Plaintiff was older and a college instructor of history in his forties that he'd most likely pass those tests. Plaintiff got tested twice in one month back in 2015 and was regularly tested and tested much more that those employees and co-workers who were younger than him.

**-e.** Plaintiff was assigned a special task by Supervisor Melanie Sholz which triggered his disability symptoms, then reassigned another task of the same type months later.

**-f.** Plaintiff Received a "verbal counseling" that was actually a written warning that included false charges such as assault of a Corporate Officer.

**-g.** Plaintiff was Cut off from full access to the Oceans of Fun - Ellis and Associates Training Portal just days prior to him attending a career development event that he was attending at his own expense, impairing his ability to prepare for the training.

25.   There were also Retaliation from Managers and Supervisors for specific instances and employment acts and/ or employment complaints done towards me because of me simply following the rules, asserting my rights and seeking out that the rules are followed:

**-a.** On June 20, 2018, Plaintiff was brought before Mel Scholz, Manager of Aquatics, and Tucker West, Operations Supervisor, and ordered to sign a write up accusing him of violating the park's social media policy, assaulting a corporate officer, and failure to comply with company service standards. Two of the charges were categorically false and Plaintiff sent the matter to Human Resources for remediation after Plaintiff refused to sign a potentially career destroying document. It is worth pointing out that no other Oceans of Fun associate was written up for violating the park's social media policy even though there were rampant photos and posts while guards were on stand with phones in violation of policy, and of often illegal activity both on and off park property.

**-b.** On Labor Day Monday 2018 Plaintiff was ordered to destroy photographic evidence of unprofessional conduct, an unsigned letter that he had photographed in order to investigate it, by the Manager of Aquatics, Mel Scholz, in lieu of being spared any further disciplinary action. The letter was written by one Lead Lifeguard, Cecila Sheeks, attacking her co-lead, Lauren Desautels. This letter was left unsecured on a desk in the Aquatic Supervisors Office, which is a frequently visited space

**-c.** Bridgette Bywater 2018/2019 Worlds of Fun Director of Park Operations placed Plaintiff on conditional rehire status for the 2019 Season without any reason, and in spite of a good attendance record, and a good performance evaluation by Melanie Scholz.

**-d.** Plaintiff was cut off from full access to the Oceans of Fun - Ellis and Associates Training Portal just days prior to him attending a career development

event which he was attending at his own expense, impairing his ability to prepare for the training.

26.     Plaintiff Steven Murphy was not only discriminated against and harassed by his Employers Managers and Supervisors and then Retaliated against but his other co-workers were treated better than him in the following ways/instances that applied to Steve Murphy as to unfair disparate treatment but other co-workers were not treated the same:

**-a.** Plaintiff was penalized for any failure to perform, while often he had to clean up, fix, and remediate issues left behind by other members of the Leadership Team.

**–b**. Plaintiff was frequently the subject of rumors spread behind his back concerning his age, mental health, physical ability, and overall fitness to be an Area Aquatics Supervisor.

**–c.** Plaintiff was denied opportunities that he was more than qualified to take advantage of while being relegated to menial tasks.

**-d.** Cheyanne Jackson, Area Aquatic Supervisor, generally got the best training slots which suited her schedule, could show up late, often intoxicated from the night before, without any consequences.  Her mother was friends with Bridgette Bywater, Director of Park Operations, and she would brag about how she had access that the rest of us did not.

**-e.** Christian Howze, Aquatic Supervisor, had access to special treats in the Manager of Aquatics Office that Plaintiff, and some of his other peers, did not.

Was rehired for 2019 Season after his girlfriend and himself harassed Plaintiff and his significant online.

**-f.** Colby Roberts, Lifeguard Associate. Sexually harassed a fellow guard, which was handled with a, "coaching session." Also dropped a bucket on a guest's head causing a concussion. Suspended for a day. His sister, Rae Ann Roberts, was friends with Cheyanne Jackson and thus they protected Colby from his own poor choices.

**-g.** No other members of Supervision were required to check in with Melanie Scholz prior to clocking out, nor did they have to give her their whereabouts when they went to neighboring Worlds of Fun. No one faced write ups for disciplinary matters or performance issues but Plaintiff did.

**-h.** Equipment was often left strewn about the deck, work areas, and pump rooms (photographic evidence available) for Plaintiff to pick up. Members of leadership were not penalized for their own behavior in this regard yet Plaintiff was.

**-i.** Plaintiff was called out over the radio by Leland Clark, Maintenance Foreman, accusing him of not doing his job at Coconut Cove during pre-opening operations when he was assisting the Lead Lifeguard and the Cove Guards with their opening efforts (again, photography and video available). Leland Clark faced no disciplinary action for making his comments over the Security Radio Network, which can be heard by the entire Administrative, Security, and Aquatics Leadership of both Worlds of Fun and Oceans of Fun.

**-j.** Plaintiff's authority was regularly undermined with regard to his role as a park safety officer, notably with regard to sleeping guards, and guards who failed

17

various assessment tests, to include Vigilance Awareness Tests. Plaintiff's fellow Supervisors, and the Manager of Aquatics, Melanie Marie Scholz, regularly dismissed, excused, and explained away any failures on the part of the lifeguards.

**-k.** Plaintiff was ordered, against best practices, by Operations Supervisor Tucker West, to put a visibly intoxicated lifeguard, Dalton Flores, on stand at the Surf City Wave Pool on the Saturday of Labor Day 2018. Flores, in his own words, said, "You guys are lucky I am even here. I was doing shots till five in the morning." It was eleven when he arrived, and eleven-thirty when Plaintiff's instructions to put him in a place where he would not be a danger was overridden by Tucker West.

## COUNT I - AMERICANS WITH DISABILITIES ACT
## (DISCRIMINATION/CONSTRUCTIVE DISCHARGE) against all Defendants

27. Plaintiff incorporates and adopts by reference the allegations contained in paragraphs 1 through 26 above.

28. At all times pertinent to this Complaint, Plaintiff was suffering from and subject to a "disability" as defined by the Americans with Disabilities Act.

29. The condition of the Plaintiff due to Major Depressive Disorder/PTSD/Anger Disorder physical panic attacks, inability to focus, headaches mood swing, fits of anger, fits of depression as alleged herein, were and are a physical impairment which substantially limits one or more of the Plaintiff's major life activities.

30. At all times material to the Plaintiff's Complaint, Plaintiff was qualified for his position and able to perform its essential functions with the reasonable accommodations

requested by the Plaintiff and his treating doctors, including, but not limited to normal amount of hours to be worked or normal workload for the job he was hired.

31. The fact Plaintiff was disabled was the motivating and/or determinative factor as to why her was subjected to discriminatory and harassing adverse and negative employment actions by Defendants and their agents, managers, supervisors, employees and Plaintiff's Co-workers when after making a reasonable accommodation requests which some was signed off on and due the fact he had disabilities under the Americans with Disabilities Act he was treated in a discriminatory manner and received unfair and suffered disparaging treatment and comments compared to his co-workers. This lead to Plaintiff being constructively discharged/quitting his job.

32. Further, the Plaintiff was retaliated against as a result of his request for his accommodations, complaints, and refusal to sacrifice his rights as an employee and not ignore the Employer's own protocols by being treated unfairly compared to other employees, by being unfairly disciplined, by being labeled a conditional employee even after completing all of his requirements and ultimately constructively discharged because the discriminatory and retaliatory acts created a Hostile Work environment which was the reason Plaintiff quit his job.

33. These acts of Discrimination were directed at the Plaintiff because he exercised his rights under the Americans with Disabilities Act.

34. Plaintiff is entitled to exemplary damages against Defendants acting in their individual and professional capacities based upon the facts alleged herein. All of the acts of Defendants' and their agents and employees were willful, wanton, reckless and

malicious and demonstrate a total and deliberate indifference to, and conscious disregard for, the safety and rights of Plaintiff.

35.     As a direct and consequential result of the Defendants' conduct, the Plaintiff sustained cost associated with training and non-economic damages including, but not limited to: pain, suffering, loss of enjoyment of life and humiliation.

WHEREFORE, Plaintiff prays that judgment be entered against all named Defendants in an amount more than $75,000.00 to be determined at trial, and include actual damages, compensatory damages, punitive damages, for costs of this action, attorney fees and for such further relief as the Court deems just and proper.

## COUNT II- AMERICANS WITH DISABILITIES ACT

### (HARASSMENT) against all named Defendants

36.     Plaintiff incorporates and adopts by reference the allegations contained in paragraphs 1 through 35 above.

37.     At all times pertinent to this Complaint, the Plaintiff engaged in conduct protected by the Americans with Disabilities Act (ADA), specifically, informing the Defendants and their employees/agents/staff at Oceans of Fun Water Park located within the Worlds of Fun Amusement Park of his disability and requesting accommodations thereof.

38.     At all times pertinent to this Complaint, Plaintiff was suffering from and subject to a "disability" as defined by the Americans with Disabilities Act.

39.     The condition of the Plaintiff due to Major Depressive Disorder/PTSD/Anger Disorder physical panic attacks, inability to focus, headaches mood swing, fits of anger,

fits of depression as alleged herein, were and are a physical impairment which substantially limits one or more of the Plaintiff's major life activities.

40.    At all times material to the Plaintiff's Complaint, Plaintiff was qualified for his position and able to perform its essential functions with the reasonable accommodations requested by the Plaintiff and his treating doctors, including, but not limited to normal amount of hours to be worked or normal workload for the job he was hired.

41.    At all times pertinent to this complaint, when Plaintiff attempted to exercise his rights under the ADA, the Plaintiff was subjected to tangible adverse employment actions which constituted Harassment and Harassment by his employers/managers/supervisors & co-workers that was sufficiently severe or pervasive enough to alter the conditions of employment.    These acts of Harassment were directed at the Plaintiff because he exercised his rights under the Americans with Disabilities Act and him being disabled was the motivating and/or determinative factor as to why he was Harassed.

42.    Plaintiff is entitled to exemplary damages against Defendants acting in their individual and professional capacities based upon the facts alleged herein. All of the acts of Defendants' and their agents and employees were willful, wanton, reckless and malicious and demonstrate a total and deliberate indifference to, and conscious disregard for, the safety and rights of Plaintiff.

43.    As a direct and consequential result of the Defendants' conduct, the Plaintiff sustained cost associated with training and non-economic damages including, but not limited to: pain, suffering, loss of enjoyment of life and humiliation.

        WHEREFORE, Plaintiff prays that judgment be entered against Defendants in an amount more than $75,000.00 to be determined at trial, compensatory damages, actual

damages, punitive damages, for costs of this action, attorney fees and for such further relief as the Court deems just and proper.

## COUNT III – AGE DISCRIMINATION IN EMPLOYMENT ACT OF 1967

## (ADEA)(DISCRIMINATION/CONSTRUCTIVE DISCHARGE)

### against all named Defendants

44.     Plaintiff incorporates and adopts by reference the allegations contained in paragraphs 1 through 43 above.

45.     At all times pertinent to this Complaint, Plaintiff was over the age of 40 having been born on July 13th, 1971 and Defendants had 20 or more employees which is required as defined by the Age Discrimination in Employment Act of 1967 (ADEA).

46.     At all times material to the Plaintiff's Complaint, Plaintiff was qualified for his position and able to perform its essential functions with the reasonable accommodations requested by the Plaintiff and his treating doctors, including, but not limited to normal amount of hours to be worked or normal workload for the job he was hired.

47.     Plaintiff's age and the fact Plaintiff was much older than his co-workers was the motivating and/or determinative factor as to why he was subjected to discriminatory and harassing adverse and negative employment actions by Defendants and their agents, managers, supervisors, employees and Plaintiff's Co-workers due to his age and assumptions that had to do with his age.   Plaintiff received unfair and suffered disparaging treatment and comments compared to his co-workers.  This lead to Plaintiff being constructively discharged/quitting his job.

48.     Plaintiff was disciplined, suffered educational detriment to his career's necessary education and certification and was ultimately certified as a conditional employee and not to be brought back as a full employee because of him being much older than the rest of his co-workers and particularly for the Lifeguard position.

49.     Further, the Plaintiff was retaliated against as a result of his age, him making complaints, and refusal to sacrifice his rights as an employee and not ignore the Defendants' own protocols by being treated unfairly compared to other employees, by being unfairly disciplined, by being labeled a conditional employee even after completing all of his requirements and ultimately constructively discharged because the discriminatory and retaliatory acts created a Hostile Work environment which was the reason Plaintiff quit his job.

50.     These acts of Discrimination were directed at the Plaintiff because he exercised his rights under the Age Discrimination in Employment Act of 1967.

51.     Plaintiff is entitled to exemplary damages against Defendants acting in their individual and professional capacities based upon the facts alleged herein. All of the acts of Defendants' and their agents and employees were willful, wanton, reckless and malicious and demonstrate a total and deliberate indifference to, and conscious disregard for, the safety and rights of Plaintiff.

52.     As a direct and consequential result of the Defendants' conduct, the Plaintiff sustained cost associated with training and non-economic damages including, but not limited to: pain, suffering, loss of enjoyment of life and humiliation.

WHEREFORE, Plaintiff prays that judgment be entered against all named Defendants in an amount more than $75,000.00 to be determined at trial, and include

23

actual damages, compensatory damages, punitive damages, for costs of this action, attorney fees and for such further relief as the Court deems just and proper.


## COUNT IV- AGE DISCRIMINATION IN EMPLOYMENT ACT OF 1967 (ADEA)(DISCRIMINATION/CONSTRUCTIVE DISCHARGE)

### against all named Defendants

53.     Plaintiff incorporates and adopts by reference the allegations contained in paragraphs 1 through 52 above.

54.     At all times pertinent to this Complaint, Plaintiff was over the age of 40 having been born on July 13th, 1971 and Defendants had 20 or more employees which is required as defined by the Age Discrimination in Employment Act of 1967 (ADEA).

55.     At all times material to the Plaintiff's Complaint, Plaintiff was qualified for his position and able to perform its essential functions with the reasonable accommodations requested by the Plaintiff and his treating doctors, including, but not limited to normal amount of hours to be worked or normal workload for the job he was hired.

56.     Plaintiff's age and the fact Plaintiff was much older than his co-workers was the motivating and/or determinative factor as to why he was subjected to Harassment and harassing adverse and negative employment actions by Defendants and their agents, managers, supervisors, employees and Plaintiff's Co-workers due to his age and assumptions that had to do with his age.  Plaintiff received unfair and suffered disparaging treatment and comments compared to his co-workers.  This lead to Plaintiff being constructively discharged/quitting his job.

24

58.     At all times pertinent to this complaint, when Plaintiff attempted to exercise his rights under the ADEA, the Plaintiff was subjected to tangible adverse employment actions which constituted Harassment and Harassment by his employers/managers/supervisors & co-workers that was sufficiently severe or pervasive enough to alter the conditions of employment.  These acts of Harassment were directed at the Plaintiff because he exercised his rights under the (ADEA) and he being of an age older than his co-workers was the motivating and/or determinative factor as to why he was Harassed.

59.     Plaintiff is entitled to exemplary damages against Defendants acting in their individual and professional capacities based upon the facts alleged herein. All of the acts of Defendants' and their agents and employees were willful, wanton, reckless and malicious and demonstrate a total and deliberate indifference to, and conscious disregard for, the safety and rights of Plaintiff.

60.     As a direct and consequential result of the Defendants' conduct, the Plaintiff sustained cost associated with training and non-economic damages including, but not limited to: pain, suffering, loss of enjoyment of life and humiliation.


        WHEREFORE, Plaintiff prays that judgment be entered against Defendants in an amount more than $75,000.00 to be determined at trial, compensatory damages, actual damages, punitive damages, for costs of this action, attorney fees and for such further relief as the Court deems just and proper.

## COUNT V- RETALIATION UNDER (ADA CLAIMS AND ADEA CLAIMS &

## EEOC) (Against all named Defendants)

61.     Plaintiff incorporates and adopts by reference the allegations contained in paragraphs 1 through 60 above.

62.     At all times pertinent to this Complaint, the Plaintiff engaged in conduct protected by the Americans with Disabilities Act (ADA), specifically, informing the Defendant of her disability and requesting accommodations thereof.

63.     At all times pertinent to this Complaint, Plaintiff was over the age of 40 having been born on July 13th, 1971 and Defendants had 20 or more employees which is required as defined by the Age Discrimination in Employment Act of 1967 (ADEA).

64.     At all times pertinent to this complaint, when he attempted to exercise his rights under the ADA  and ADEA, to work at his job and to voice concerns with violations of company protocol and to voice complaints, because of this the Plaintiff was subjected to adverse employment actions including but not limited to being placed with people that were hostile toward him intentionally, supervisors stating they wanted to take Plaintiff out of his comfort zone,  being wrongly reprimanded and disciplined for not signing off on proposed discipline and false allegations, was unfairly drug tested, told to destroy evidence of wrongdoings, was ultimately made a conditional employee; these retaliatory actions were directed at the Plaintiff because he exercised his rights under the Americans with Disabilities Act (ADA) and the Age Discrimination in Employment Act (ADEA).

65.     As a direct and consequent result of the Defendants' retaliation through their various retaliatory acts and the constructive discharge/termination of his employment, the

Plaintiff sustained a past and future loss of income together with non-economic damages including, but not limited to: pain, suffering, loss of enjoyment of life and humiliation.

66.     Plaintiff is entitled to exemplary damages against Defendants their agents, managers, supervisors and employees acting in their individual and professional capacities based upon the facts alleged herein. All of the acts of Defendants were willful, wanton, reckless and malicious and demonstrate a total and deliberate indifference to, and conscious disregard for, the safety and rights of Plaintiff.

WHEREFORE, Plaintiff prays that judgment be entered against Defendants in an amount greater than $75,000.00 to be determined at trial, compensatory damages, actual damages, punitive damages, for costs of this action, attorney fees and for such further relief as the Court deems just and proper.

## DEMAND FOR A JURY TRIAL OF ALL ISSUES

67.     Plaintiff demands a jury trial on all issues in this matter.

Respectfully Submitted,
LAW OFFICES OF EDWARD A.STUMP, LLC.

By: /s/ *Edward A. Stump*

Edward A. Stump  MO Bar# 57120
The Law Offices of Edward A. Stump, LLC
P.O. Box 412602
Kansas City, MO 64141
Phone: (816) 214-5810
Fax: (816) 561-9935
Email: law.offices.edstump@gmail.com

ATTORNEY FOR PLAINTFF